```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


James Jerome Royster,          :

       Plaintiff,              :

    v.                         :      Case No. 11-cv-1163

Gary Mohr, et al.,             :      JUDGE PETER C. ECONOMUS
                                      Magistrate Judge Kemp
       Defendants.             :
```

REPORT AND RECOMMENDATION

   Plaintiff, James Jerome Royster, a state prisoner confined at the Chillicothe Correctional Institution ("CCI"), filed this action against director of the Ohio Department of Rehabilitation and Correction ("ODRC") Gary Mohr, warden Norm Robinson, CCI health care administrator Alice Ault, and physician Dr. Williams, asserting an Eighth Amendment claim under 42 U.S.C. § 1983, a claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12102(2), and a medical malpractice and/or negligence claim based on state law.  In his complaint, Mr. Royster claims that the defendants exhibited deliberate indifference to his serious medical needs by failing to provide him with the necessary medical treatment and equipment to manage the severity and frequency of pain caused by degenerative scoliosis and spinal stenosis.  Among other things, Mr. Royster alleges that Dr. Williams confiscated and failed to replace his transcutaneous electrical unit ("TENS unit") and improperly prescribed him the medication Moloxicam, which Mr. Royster alleges can be fatal if administered to a person with his medical history.

   On January 2, 2013, defendants Gary Mohr, warden Norm Robinson, and Alice Ault (collectively "defendants") moved for judgment on the pleadings.  (Doc. #22).  Included in the motion for judgment on the pleadings is a request that this Court

dismiss Dr. Williams as a party to this action due to alleged insufficient service of process.  Mr. Royster filed an opposition to defendants' motion for judgment on the pleadings on January 13, 2013.  (Doc. #23).  Defendants filed a reply brief in support of their motion on January 23, 2013 (Doc. #24), and Mr. Royster filed a sur-reply opposing the motion on February 5, 2013 (Doc. #25). Consequently, the motion for judgment on the pleadings is ripe for consideration.

For the reasons that follow, it will be recommended that the motion for judgment on the pleadings be granted as to defendants Gary Mohr, Norm Robinson, and Alice Ault.  However, to the extent that defendants seek to have Dr. Williams dismissed from this case due to Mr. Royster's alleged failure to serve him properly, it will be recommended that Mr. Royster be granted a twenty-eight day extension of time to effect service on Dr. Williams. Consequently, it will be recommended that the request to dismiss Dr. Williams be denied.

## I. Legal Standard

A motion for judgment on the pleadings attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss.  <u>Amersbach v. City of Cleveland</u>, 598 F.2d 1033, 1038 (6th Cir. 1979).  In ruling upon such a motion, the Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  <u>Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 479 F.2d 478, 480 (6th Cir. 1973).

The new pleading standards articulated in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) apply with equal force to motions for judgment on the pleadings.  <u>See</u> <u>Schwab v. Smalls</u>, No. 10-221-cv, 2011 WL 3156530,

at *1 (2d Cir. July 27, 2011). Those cases make clear that in order to survive such a motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Further, the Court must disregard statements of legal conclusions and look only to the well-pleaded facts of the complaint in order to determine its legal sufficiency. *Pro se* complaints are to be construed liberally in favor of the *pro se* party. See Haines v. Kerner, 404 U.S. 519, 520 (1972). It is with these standards in mind that the motion for judgment on the pleadings must be decided.

## II. Service as to Dr. Williams

In the motion for judgment on the pleadings, defendants assert that Dr. Williams has yet to be served properly. (Doc. #22 at n.1). Consequently, defendants request that Dr. Williams be dismissed from this action. Id. Without proper service on Dr. Williams, this Court may not exercise personal jurisdiction over him. See Elkins v. Summit County, No. 5:06-CV-3004, 2008 WL 622038, at *2 (N.D. Ohio Mar. 5, 2008) (citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999)). Fed. R. Civ. P. 4(e) governs service on individuals within a judicial district of the United States. Under Fed. R. Civ. P. 4(e)(1), service may be effected pursuant to the law of the state where the district court is located. Ohio R. Civ. P. 4.1(A) allows service to be made by certified mail evidenced by return receipt. Further, in cases involving a plaintiff proceeding in forma pauperis, the United States Marshal, by order of the Court, shall serve the summons and the complaint. Fed. R. Civ. P. 4(c)(3).

Fed. R. Civ. P. 4(m) sets forth the general requirement that a complaint and summons be served on each named defendant within 120 days of the date the complaint is filed. By its terms, the rule requires that the Court take either one of two actions if

service is not made within that time frame - either "dismiss the action without prejudice against that defendant" or "order that service be made within a specified time." The rule also contains a mandate concerning extensions of time to make service; it provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." The Advisory Committee Notes to the 1993 amendments to Rule 4 interpret this language to mean that when a plaintiff has shown good cause to extend the time for making service, the Court must grant an extension; on the other hand, when the plaintiff has not shown good cause, the Court still *may* grant an extension if that would represent a sound exercise of the Court's discretion. This Court has adopted that interpretation of Rule 4(m). See Vergis v. Grand Victoria Casino and Resort, 199 F.R.D. 216, 217-18 (S.D. Ohio 2000). Other district courts within the Sixth Circuit have reached similar conclusions. See, e.g., In re Aredia and Zometa Prod. Liab. Litig., No. 3:06-MD-1760, 2007 WL 4376098, *2 (M.D. Tenn. Dec. 13, 2007)("this Court may clearly grant more time without a showing of good cause ..."); see also Slenzka v. Landstar Ranger, Inc., 204 F.R.D. 322, 325-26 (E.D. Mich. 2001); Burnett v. Martin, No. 6:06-482-DCR, 2007 WL 2156541, at *1-2 (W.D. Ky. July 24, 2007).

In this case, defendants acknowledge that Dr. Williams was a physician who worked at CCI under a personal services contract, and that Mr. Royster attempted to serve Dr. Williams at CCI by certified mail service. (Doc. #10 at n.1). Defendants assert, however, that an individual at CCI "mistakenly accepted" certified mail service for Dr. Williams because he "has not worked at [CCI] for quite some time." Id. According to defendants' counsel, the facts pertaining to the attempted service on Dr. Williams are as follows:

Plaintiff's Complaint named a "Dr. Williams" and

4

> Plaintiff apparently prepared a summons for service by certified mail through the United States Marshal's Office on January 5, 2012 for "Dr. Williams" to be served at [CCI]. Later, on January 12, 2012, the Court had received the signed certified mail receipt indicating that service has been accepted for Dr. Williams at [CCI].
> However, it was later determined that the certified mail had been accepted in error as "Dr. Williams" did not work at CCI and no forwarding address information for "Dr. Williams" was known by CCI personnel. [Defendants' counsel] was advised by CCI personnel that the certified mail was to be sent back to the United States Marshal's Office indicating that it been accepted in error.
> Prior to filing the Notice of Appearance and Defendants' Answer, [defendants' counsel] made diligent attempts to locate "Dr. Williams" through contact with various prison officials at institutions where it was thought that "Dr. Williams" may have at one time been employed, including Belmont Correctional Institution, as well as the ODRC Central Office.  No definitive information could be obtained as to where "Dr. Williams" could be contacted.

(Doc. #19 at 3-4)(citations omitted).  Defendants' counsel raised the issue of the allegedly insufficient service of process on Dr. Williams in the notice of appearance (Doc. #10 at n.1) (indicating that defendants' counsel was not authorized to enter an appearance on behalf of Dr. Williams or to waive service for him), in a motion for an extension of time to file dispositive motion (Doc. #19)(quoted above), and in defendants' motion for judgment on the pleadings (Doc. #22 at n.1)(stating that "no service has yet to be perfected on 'Dr. Williams'" and requesting that "'Dr. Williams' be dismissed under Fed. R. Civ. P. 4(m), or alternatively, under Fed. R. Civ. P. 41(b) for failure to prosecute").  Mr. Royster has not responded to the service issue and, according to defendants, he has not "filed any requests for discovery in order that he might learn the whereabouts of 'Dr. Williams.'" (Doc. #22 at n.1).  Further, the docket does not reflect that CCI personnel returned the certified mail to the United States Marshal's Office indicating that it had been

accepted in error.

The question before this Court is whether service by certified mail at CCI, where Dr. Williams formerly served as a physician under a personal services contract, with a receipt signed by a person other than him, constitutes adequate service under Ohio law.  It is well established that Ohio law allows for service of process by certified mail even if someone other than the defendant signs the certified mail receipt.  See Elkins, 2008 WL 622038 at *3; Castellano v. Kosydar, 326 N.E.2d 686, 689 (Ohio 1975)(providing that service by certified mail is no longer required to be delivered to and signed by addressee only).  Whether service was proper at a former place of employment, however, requires further discussion.

The sufficiency of certified mail service at a place of employment or business address is a "recurrent and troublesome problem. . ." Bell, 624 N.E.2d at 198.  Indeed, the Ohio Supreme Court has acknowledged that there are inherently greater risks in such service due to "the oftentimes numerous intermediate, and frequently uninterested, parties participating in the chain of delivery."  Akron-Canton Regional Airport Auth. v. Swinehart, 406 N.E.2d 811, 813-14 (Ohio 1980).  In evaluating the sufficiency of service of process, "a principal consideration is that the party being served must have such a habitual, continuous or highly continual and repeated physical presence at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served."  Id. (quoting Bell v. Midwestern Educational Serv., Inc., 624 N.E.2d 196, 202 (Ohio Ct. App. 1993)) (internal quotations omitted).  This is a global consideration of whether the service comports with due process, and whether the notice is reasonably calculated to apprise the interested party of the pendency of the action.  See id. (citing

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

Ohio courts examining whether an individual can be served properly at a former place of employment have found that the service, even if accepted by another individual, does not comport with due process because the defendant is not physically present at the location. See, e.g., Call Detroit Diesel Allison, Inc. v. C&D Oil Co., Inc., No. CA 85A05-038, 1985 WL 7304, at *3 (Ohio Ct. App. Oct. 25, 1985) (finding that service was not reasonably calculated to reach defendant because he was not employed at the place of business at the time of service, despite the fact that service was received by defendant's mother); cf. Swinehart, 406 N.E.2d at 813-14 (holding that service on a business address only sporadically visited by a business advisor was not reasonably calculated to reach him and did not comport with due process); Bell, 624 N.E.2d at 199-203 (finding that service of process on defendant shareholders was invalid because they did not have a habitual, continuous, or highly continual and repeated physical presence at the business location and it was not reasonably calculated to apprise them of the action, where the certified mail deliveries were signed for by someone other than defendants). Federal courts examining this issue have reached the same conclusion. See, e.g., Higgason v. Morton, No. 3:98-CV-105, 2012 WL 3109371, at *1-4 (N.D. Ind. July 26, 2012) (holding service invalid where plaintiff attempted service by certified mail on corrections officers who, unbeknownst to plaintiff, no longer worked at the prison and mailroom employee accepted service despite the fact that defendants were no longer employed there); Randolph v. East Palo Alto, No. C 06-07476 SI, 2007 WL 1232057, at *5 (N.D. Cal. Apr. 26, 2007) (finding service improper where plaintiff served defendant at police station, his former place of employment, and service was accepted by

individual other than defendant); but see Izen v. Catalina, 256 F.3d 324, 327 (5th Cir. 2001) (determining that service of process was valid at defendant's former place of employment where an individual other than defendant signed the return receipt and defendant received prompt, actual notice of the lawsuit at his current place of work).

The decision to extend time in which to effect service is within the trial court's sound discretion. See Friedman v. Estate of Presser, 929 F.2d 1151, 1157 (6th Cir. 1991). Here, it appears to be undisputed that Dr. Williams no longer works at CCI and he has not worked there for some time. For that reason, Mr. Royster's attempted certified mail service upon Dr. Williams at CCI was not reasonably calculated to inform him of this action. See id. This is true despite the fact that a CCI representative signed for the certified mail and the docket does not reflect that CCI personnel returned the certified mail to the United States Marshal's Office indicating that it been accepted in error. See C&D Oil, 1985 WL 7304 at *2.

Mr. Royster has not provided any explanation for his failure to serve Dr. Williams properly, and it does not appear that Mr. Royster has made any effort to discover information necessary for service. Mr. Royster's *pro se* status does not relieve him of his obligation to effect service properly. See Becker v. Warden Ross Corr. Inst., No. 2:05-CV-908, 2006 WL 2869567, at *3 (S.D. Ohio Oct. 5, 2006)(citation omitted). Although the Court does not condone the delay and Mr. Royster's less than diligent efforts to serve Dr. Williams, it is appropriate to give Mr. Royster one further opportunity to effect such service. The Court makes this finding in its discretion and guided by the "strong preference claims be adjudicated on their merits." Coleman v. Shoney's, Inc., 79 Fed. Appx. 155, 157 (6th Cir. 2003). Consequently, it will be recommended that defendants' request to dismiss Dr.

Williams be denied and that Mr. Royster be granted a twenty-eight day extension to effect service on Dr. Williams.

### III. Defendants' Arguments and Plaintiff's Responses

In their motion for judgment on the pleadings, defendants raise five arguments. First, defendants assert that they have been sued in their official capacities and that such claims are barred by the Eleventh Amendment to the United States Constitution. Defendants also argue that Mr. Royster is barred from seeking monetary damages from them in their official capacities, except for in the Ohio Court of Claims. (Doc. #22 at 9). Second, defendants argue that Mr. Royster's complaint fails to plead facts supporting a claim of deliberate indifference to his serious medical needs, and his allegations of medical malpractice are not cognizable in a lawsuit brought under §1983. Third, defendants argue that Mr. Royster's claims against them in their individual capacities fail because he does not allege any facts suggesting their personal involvement. Defendants also claim that they, as government officials performing discretionary functions, are afforded a qualified immunity defense under §1983, because their conduct did not violate a clearly established statutory or constitutional right. Fourth, defendants argue that this Court should decline to exercise supplemental jurisdiction over Mr. Royster's state law claims for medical malpractice and/or negligence. In addition, defendants assert that this Court is without jurisdiction to hear Mr. Royster's claim of medical malpractice and/or negligence against them in their individual capacities, which they allege should have been brought in the Ohio Court of Claims. Fifth, defendants contend that Mr. Royster's ADA claim should be dismissed because they are not proper defendants under the statute. Further, defendants argue that Mr. Royster has not pleaded sufficient facts to qualify him as a disabled person under the ADA.

In response, Mr. Royster appears to argue that defendants violated F. R. Civ. P. 12(b) by asserting affirmative defenses in

their answer, but addressing them more thoroughly in the motion for judgment on the pleadings.  Mr. Royster also argues that defendants rely on waived defenses in the motion.  In reply, defendants assert that their motion does not rely upon any defense that was waived and that the motion is properly before the Court.  Finally, in a sur-reply, Mr. Royster argues that defendants' motion for judgment on the pleadings should be treated as a motion for summary judgment and that defendants have waived the arguments they set forth in their motion.

## IV. Analysis

In examining the pending motion for judgment on the pleadings, the Court first will address Mr. Royster's §1983 claims against defendants in their official capacities and next will turn to the §1983 claims against defendants in their individual capacities.  The Court then will examine Mr. Royster's ADA claim.  Finally, the Court will discuss Mr. Royster's medical malpractice and/or negligence claim arising under state law.

### A. §1983 Claims Against Defendants in Their Official Capacities

The Eleventh Amendment to the United States Constitution bars suits against either a state or agencies of a state by citizens of that state.  Edelman v. Jordan, 415 U.S. 651, 651 (1974).  Under certain circumstances, a suit against an individual state official may nonetheless be deemed to be a suit against the state and therefore barred by the Eleventh Amendment.  The primary test for determining whether the state is the real party in interest in a suit is whether the source of any funds from which a damage award would be paid would be the state treasury.  Id. at 663.  Additionally, if an individual is alleged to have only vicarious liability as a result of his official position, any damage award made (if one were permissible) would necessarily be against the office rather than the officeholder and therefore be an award against the state.  See Hall v. Medical College of Ohio, 742 F.2d 299, 305 (6th Cir. 1984).  When a suit

is barred by the Eleventh Amendment, the Court lacks jurisdiction over it and it must be dismissed without prejudice. Cf. Gwinn Comm. Sch. v. Michigan, 741 F.2d 840, 846-47 (6th Cir. 1984).

In his complaint, Mr. Royster makes clear that he filed the lawsuit against defendants "in their individual and official capacities." (Doc. #3 at 6). Consequently, Mr. Royster's claims for monetary relief against defendants in their official capacities must be dismissed under the Eleventh Amendment. Defendants do not, however, have Eleventh Amendment immunity with respect to Mr. Royster's claims against them in their individual capacities. The Court now turns to those claims.

### B. §1983 Claims Against Defendants in Their Individual Capacities

Defendants apparently concede that they may be liable in their individual capacities for damages under §1983, but only to the extent that they participated directly in the claimed violations. Defendants argue that Mr. Royster has not alleged that they had any direct involvement in the alleged constitutional violations at CCI. For this reason, defendants contend that they are entitled to judgment on the pleadings as to Mr. Royster's claims against them in their individual capacities under §1983.

Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of *respondeat superior*, are necessary in order to hold an individual defendant liable under §1983. See Monell v. Department of Soc. Servs., 436 U.S. 658, 658 (1978). Although there are other legal claims that can be asserted properly against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under §1983 cannot rest on such a claim. Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in

the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted.  See Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior.  See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under §1983 for failing to respond to grievances which alert them of unconstitutional actions); see also Stewart v. Taft, 235 F. Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under §1983 cannot attach where the allegation of liability is based upon a mere failure to act").

In reviewing defendants' motion for judgment on the pleadings, the Court has accepted as true all well-pleaded factual allegations in the complaint and given appropriate consideration to Mr. Royster's *pro se* status.  Having done so, it is clear that defendants are nevertheless entitled to judgment on Mr. Royster's §1983 claims against them in their individual capacities.

The alleged constitutional violations in this case relate to the confiscation of Mr. Royster's TENS unit, the failure to replace the TENS unit, and the prescription of the medication Moloxicam.  Mr. Royster identifies Dr. Williams as being connected to these actions, stating that the TENS unit "was confiscated by Dr. Williams" and that "Dr. Williams prescribed a Pain Management Drug 'Moloxicam'. . ."  (Doc. #3 at ¶¶35-36).  As noted above, Dr. Williams has not been served successfully, and he is not properly before the Court.  Mr. Royster does not allege that defendants participated in, or encouraged, the decisions to deny him the TENS unit or to prescribe him Moloxicam.  Hence, his theory of liability appears to be based on the idea that defendants had supervisory authority over the individual who may have been involved in the allegedly unconstitutional conduct.

Because Mr. Royster must allege personal involvement by each defendant in the alleged deprivation of his rights and may not base liability on *respondeat superior* or vicarious liability, such allegations are insufficient to maintain the §1983 claims against defendants.  For these reasons, the Court will recommend that the motion for judgment on the pleadings be granted as to Mr. Royster's §1983 claims.

### C. ADA Claim

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any other commuter authority (as defined in section 24102(4) of Title 49)."  42 U.S.C. §12131.

Although the ADA applies to both federal and state prisons, see Minqus v. Butler, 591 F.3d 474, 482 (6th Cir. 2010), individual prison officials cannot be held individually liable under the ADA.  See Cox v. Jackson, 579 F. Supp. 2d 831, 850 (E.D. Mich. 2008) ("'Public entity' under the Act does not include an individual prison official, and thus plaintiff fails to state a claim against the individual defendants under the ADA").  As noted above, Mr. Royster has sued defendants in their individual and official capacities; he has not sued ODRC, CCI, or any other "public entity" as defined by the statute.  Because Mr. Royster may not bring an ADA claim against defendants in their individual capacities, it will be recommended that the motion for judgment on the pleadings be granted as to those claims.

Although a public official acting in his or her official

13

capacity may be a proper defendant under an ADA Title II claim, see <u>Carten v. Kent State Univ.</u>, 282 F.3d 391, 396-97 (6th Cir. 2002), Mr. Royster bears the burden of demonstrating that he is a qualified individual with a disability within the meaning of the statute and that he is being denied the benefits of a service, program, or activity by reason of his disability.  See <u>Tucker v. Tennessee</u>, 539 F.3d 526, 533 (6th Cir. 2008).  An individual is disabled under the ADA if he or she (1) has a physical impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment.  See <u>Talley v. Family Dollar Stores of Ohio, Inc.</u>, 542 F.3d 1099, 1105 (6th Cir. 2008).

    Defendants claim that despite Mr. Royster's "unsupported and self-serving statement that he is a disabled person, no evidence has been put forth in the record that his physical ailments has [sic] qualified as a disabled person."  (Doc. #22 at 23)(citation omitted).  There is no question that Mr. Royster suffers from scoliosis, which is supported by medical records from 1967 and 1970.  (Doc. #3, Appendix 1).  However, "[m]erely having an impairment does not make one disabled for purposes of the ADA." <u>Gerton v. Verizon South Inc.</u>, 145 Fed. Appx. 159, 164-65 (6th Cir. 2005).  Here, Mr. Royster has not alleged that his physical impairment substantially limits one or more of his major life functions, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, and learning.  See <u>id.</u>  Further, aside from old medical records which indicate that he has scoliosis, Mr. Royster has not provided a record of such an impairment.  Finally, it cannot be said that Mr. Royster is regarded as having an impairment because, as he observed twice in his complaint, the "Department of Corrections has never recognized [him] as a Disabled Person."  (Doc. #3 at ¶¶ 15, 38). Thus, Mr. Royster has failed to plead facts supporting a disability, which is a threshold requirement to prove a violation of the ADA.  See <u>Gerton</u>, 145 Fed. Appx. at 164-65.

Further, even assuming that Mr. Royster could demonstrate that he was disabled under the ADA, he fails to allege that he was denied the benefit of a service, program, or activity by reason of his disability. The alleged denial must be "solely" by reason of the disability. See Sandison v. Michigan High Sch. Athletic Ass'n, Inc., 64 F.3d 1026, 1036 (6th Cir. 1995). Here, Mr. Royster fails to plead facts suggesting that his TENS unit was confiscated and not replaced due to his alleged disability. Rather, according to Mr. Royster's complaint, the TENS unit was not replaced due to a shortage of funds. (Doc. #3 at ¶44). In addition, Mr. Royster has not set forth any law or facts demonstrating that defendants have a duty to provide a TENS unit for persons who, like Mr. Royster, are suffering from pain associated with scoliosis. Cf. Crumbaker v. McClean County, Ky., 37 Fed. Appx. 784, 786 (6th Cir. 2002) (finding a lack of evidence as to whether defendants had a duty to provide medical treatment or assistance to individuals who are mentally ill or addicted to illegal drugs). Indeed, medical treatment decisions, or alleged medical malpractice, cannot form the basis of a claim under the ADA. See Baldridge-El v. Gundy, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000)(stating that the plaintiff's ADA claim fails because the ADA does not "provide a cause of action for medical malpractice"); see also Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005) ("A lawsuit under [the ADA] cannot be based on medical treatment decisions"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)(recognizing that "the ADA does not create a remedy for medical malpractice"). Based on the foregoing, this Court will also recommend that defendants' motion be granted on this ground.

### D. Medical Malpractice and/or Negligence

Last, the Court turns to Mr. Royster's medical malpractice and/or negligence claim based on state law. Defendants argue, inter alia, that the state law claims that Mr. Royster proposes to assert are not actionable here. This Court agrees. To the extent that Mr. Royster seeks to assert state law claims against

defendants, under O.R.C. §9.86 no such claims may be maintained against state officials unless and until it has been determined that those officials acted manifestly outside the scope of their employment. That determination cannot be made by a federal court; rather, it is reserved for the Ohio Court of Claims under O.R.C. §2743.02(F). See Griffin v. Kyle, No. 2:10-cv-664, 2011 WL 2885007, at *3 (S.D. Ohio July 15, 2011). As this Court explained in Nuovo v. The Ohio State University, 726 F. Supp.2d 829, 848 (S.D. Ohio 2010)(Frost, J.),

> as another judicial officer has recognized, "[t]he Sixth Circuit has read §§9.86 and 2743.02(F) together to hold that a state employee is immune from state law claims until the Court of Claims has held that §9.86 immunity is unavailable." Prior v. Mukasey, No. 3:08CV994, 2008 WL 5076821, at *2 (N.D. Ohio Nov. 21, 2008). This means that, "[u]ntil the Ohio Court of Claims determines that [defendants] are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert jurisdiction. Id. (quoting Haynes v. Marshall, 887 F.2d 700, 705 (6th Cir. 1989)).

Accordingly, this Court will recommend that the motion for judgment on the pleadings be granted as to Mr. Royster's state law claims of medical malpractice and/or negligence.

## V. Conclusion

For the reasons set forth above, it is recommended that the motion for judgment on the pleadings be granted as to defendants Gary Mohr, Norm Robinson, and Alice Ault. However, to the extent that defendants seek to have Dr. Williams dismissed from this case due to Mr. Royster's alleged failure to serve him properly, it is recommended that Mr. Royster be granted a twenty-eight day extension of time to effect service on Dr. Williams. Consequently, it is recommended that the request to dismiss Dr. Williams be denied.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge